TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 86-802 |
|  | : |  |
| of | : | APRIL 1, 1987 |
|  | : |  |
| JOHN K. VAN DE KAMP | : |  |
| Attorney General | : |  |
|  | : |  |
| RODNEY O. LILYQUIST | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE DAVID G. KELLEY, MEMBER, STATE ASSEMBLY, has requested an opinion on the following question:

Where physicians form a professional corporation to which other physicians refer their patients for the performance of pulmonary and cardiac stress tests, would payment of a fee by the corporation to the referring physician for preparing an evaluation report of the referred patient's test data violate Business and Professions Code section 650?

CONCLUSION

Where physicians form a professional corporation to which other physicians refer their patients for the performance of pulmonary and cardiac stress tests, payment of a fee by the corporation to the referring physician for preparing an evaluation report of the referred patient's test data would violate Business and Professions Code section 650 where no legitimate reason would exist for the report to be prepared as part of the referral.

1

ANALYSIS

Business and Professions Code section 650[1] states in part:

"Except as provided in Chapter 2.3 (commencing with Section 1400) of Division 2 of the Health and Safety Code the offer, delivery, receipt or acceptance, by any person licensed under this division of any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients, clients, or customers to any person, irrespective of any membership, proprietary interest or coownership in or with any person to whom such patients, clients or customers are referred is unlawful.

"Except as provided in Chapter 2.3 (commencing with Section 1400) of Division 2 of the Health and Safety Code and in Section 654.1 it shall not be unlawful for any person licensed under this division to refer a person to any laboratory, pharmacy, clinic, or health care facility solely because such licensee has a proprietary interest or coownership in such laboratory, pharmacy, clinic, or health care facility; but such referral shall be unlawful if the prosecutor proves that there was no valid medical need for such referral."[2]

The question presented for analysis concerns whether the provisions of section 650 would be violated in the following situation: (1) three physicians form a professional corporation in which they are the officers, directors, and shareholders, (2) physicians other than these three refer their patients to the corporation for the performance of needed pulmonary and cardiac stress tests, (3) the corporation pays the referring physician a fee to prepare an evaluation of his or her patient's test results, (4) the fee represents the reasonable value of the professional services rendered in preparing the report, and (5) the patient pays the corporation for the tests and report. We conclude that section 650 would be violated in such circumstances where the referring physician would have no need to obtain the report as part of the referral.

---

[1] All section references hereafter are to the Business and Professions Code unless otherwise specified.

[2] Health and Safety Code sections 1400-1413 govern the licensing of health care referral agencies. A "person licensed under this division" (§§ 500-4905) covers some 22 categories of health care professionals, such as physicians, pharmacists, and operators of clinical laboratories. Section 654.1 requires the licensee to disclose his ownership interest in the laboratory and advise the patient that another laboratory may be chosen by the patient to perform the tests.

86-802

In *Mason* v. *Hosta* (1984) 152 Cal.App.3d 980, 984, the Court of Appeal quoted from 63 Ops.Cal.Atty.Gen. 89, 90 (1980), in describing the five elements of the offense prohibited by section 650:

> "'(1) An offer, delivery, receipt or acceptance,
>
> "'(2) by any person licensed under [the healing arts provisions],
>
> "'(3) of consideration . . .
>
> "'(4) as compensation or inducement for,
>
> "'(5) referral of patients, clients or customers.'"[3]

In 16 Ops.Cal.Atty.Gen. 18, 19 (1950), we summarized the statutory provisions as follows:

> "Generally speaking, section 650 [of the] Business and Professions Code, in so far as it relates to physicians and surgeons, prohibits a physician and surgeon from seeking an additional fee or profit that is to be unknowingly paid to him by one of his patients through the device of a third party excessively charging the patient for medicine, medical laboratory examinations, therapeutical applicances, or other auxiliary medical services and paying such excess charges to the physician and surgeon."

The purposes of section 650 are to protect the public from excessive health care costs (*Mason* v. *Hosta, supra,* 152 Cal.App.3d 980, 986), referrals based upon considerations other than the best interests of the patients (68 Ops.Cal.Atty.Gen. 140, 144 (1985)), deceit and fraud (63 Ops.Cal.Atty.Gen. 89, *supra,* 91), and payment to a licensee where professional services have not been rendered (16 Ops.Cal.Atty.Gen. 18, *supra,* 21). (See also 68 Ops.Cal. Atty.Gen. 28, *supra,* 31; 65 Ops.Cal.Atty.Gen. 252, 253 (1982); 53 Ops.Cal.Atty.Gen. 117, 118 (1970).) The legislation was enacted to reinforce the following provision of the Ethics of the American Medical Association:

> "'. . . The acceptance of rebates on prescriptions or appliances, or of commissions from attendants who aid in the care of patients is unethical.

---

[3] The statute (paragraph two) is also violated where the licensee's referral is without a valid medical need to a laboratory in which the licensee has an ownership or proprietary interest. (See 68 Ops.Cal.Atty.Gen. 28 (1985).)

An ethical physician does not engage in barter or trade in the appliances, devices or remedies prescribed for patients, but limits the sources of his professional income to professional services rendered the patient. He should receive his remuneration for professional services rendered only in the amount of his fee specifically announced to his patient at the time the service is rendered or in the form of a subsequent statement, and he should not accept additional compensation secretly or openly, directly or indirectly, or from other source.'" (See 16 Ops.Cal.Atty.Gen. 18, *supra*, 20-21.)

Here, the referring physician would be paid in connection with each referral sent to the corporation. This arrangement is to be contrasted with the situation where the patient's test data are interpreted by a specialist, not the referring physician, or where the corporation performs and charges the patient only for the tests without an interpretive report.

A person receiving a referral may give consideration to the person making the referral under limited circumstances. If the payment is not to induce or compensate for the referral, section 650 is not violated. (*Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 390 [payment represented reasonable value of equipment and office space rented]; 63 Ops.Cal.Atty.Gen. 89, *supra*, 93 [consideration given out of friendship, in exchange for professional services, or some other reason not related to the referral]; 53 Ops.Cal.Atty.Gen. 117, *supra*, 119 [payment represented fair rental value of the office space rented]; see also 55 Ops.Cal.Atty.Gen. 103, 108 (1972).) Consideration given in exchange for the referral is one of the elements to be proved in establishing the offense. (*Mason* v. *Hosta*, *supra*, 152 Cal.App.3d 980, 984.)

Here we are given that a medical need exists for the performance of the stress tests. A referral to the corporation would thus be appropriate in order to perform those tests. The same cannot be said, however, for the referral to include an evaluation report when such report is to be prepared by the referring physician.

We have been given no explanation of why the referral should include an evaluation report under these circumstances except to receive consideration for the report in violation of section 650. The fee paid for the report would constitute "consideration, whether in the form of money or otherwise, as compensation or inducement for referring patients." (§ 650.) Rather than only the best interests of the patient being considered in making the referral, this arrangement would also be concerned with the best interests of the corporation and the physician.

The interposing of the corporation between patient and physician with respect to the interpretive report provides a potential for increasing the patient's health care costs.  The procedure suggested here could easily lead to double billing.

We note that an actual increase in the total health care costs of the patient need not occur to prove a violation of section 650.  In *Mason* v. *Hosta*, *supra*, 152 Cal.App.3d 980, 986-987, the court stated:

> "The court in *Mast* v. *State Board of Optometry*, *supra*, 139 Cal.App.2d 78, 91, held:  'An excessive charge [to the patient] is *not* an element of the offense.'  (Italics added.)  Pertinent to this argument of plaintiff is the Attorney General's response in 63 Ops.Cal.Atty.Gen., *supra*, at page 94: '[S]ection 650 in no way requires . . . that there in fact be an obvious increased cost to patients [resulting from the prohibited referral fee] . . . .  Essentially, it is the potential for harm to patients as well as actual harm to them that is proscribed by Section 650.'

> ". . . . . . . . . . . . . . . . . . . . . .

> "'In California alone, health care costs gross nearly $10 billion annually and undoubtedly constitute the largest single industry in the state, exceeding agriculture and aerospace in   dollar volume.'   Obviously a business of that scope and breadth is susceptible of possible   abuses   and potential harm to the user public.  The Legislature was aware of the reprehensible practices of some unethical licentiates who engaged in nefarious practices which resulted in 'kickbacks,' 'rebates' and 'hidden fees,' and   enacted section 650 of the Business and Professions Code to proscribe such activities."  (Fn. omitted.)

Moreover, disclosure to the patient of the details concerning the referral would not prevent a violation of the statute.  The essential elements would still remain: payment made to the physician as an inducement for the referral.

We find support for our conclusion in federal law. Both Medicare and Medicaid identically provide:

> "Whoever knowingly and willfully offers or pays remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to induce such person . . . to refer an individual . . . ."  (42 U.S.C. 1394nn (b)(2), 1396h(b)(2).)

5

86-802

As with section 650 (See 16 Ops.Cal.Atty.Gen. 18, *supra*, 20-21), the purpose of these federal statutes is "to provide penalties for certain practices which have long been regarded by professional organizations as unethical, as well as unlawful in some jurisdictions, and which contribute appreciably to the cost of" medical care. (1972 U.S. Cong. & Admin. News, at p. 5093; see *United States* v. *Tapert* (6th Cir. 1980) 625 F.2d 111, 121.)

The federal laws are violated where one purpose of the consideration given is to induce a referral. It is irrelevant that the consideration serves also as compensation for services legitimately rendered, whether the services are professional in nature or not. (*United States* v. *Greber* (3d Cir. 1985) 760 F.2d 68, 71-72; *United States* v. *Tapert*, *supra*, 625 F.2d 111, 113-121; *United States* v. *Hancock* (7th Cir. 1978) 604 F.2d 999, 1001-1002.)

In *Greber,* the operator of a medical laboratory was prosecuted for paying "interpretation fees" to referring physicians for evaluating their patients' test data. The defendant argued that no violation occurred because each physician was being paid for rendering professional services and would be responsible for the interpretive report. In rejecting this argument, the court stated:

> ". . . Even if the physician performs some service for the money received, the potential for unnecessary drain on the Medicare system remains. The statute is aimed at the inducement factor.
>
> ". . . . . . . . . . . . . . . . . . . . . . .
>
> ". . . If the payments were intended to induce the physician to use Cardio-Med's services, the statute was violated, even if the payments were also intended to compensate for professional services." (*United States* v. *Greber*, *supra*, 760 F.2d 68, 71-72.)

In *Hancock,* the doctors argued that they were paid a legitimate fee by the laboratory to obtain, package, and send the blood and tissue specimens to the laboratory and to interpret the results of the tests performed. The court concluded otherwise:

> ". . . the element of corruption is found in this allegation that the defendants received payments in return for their decision to send specimens to Chem-Tech. The potential for increased costs to the Medicare-Medicaid system and misapplication of federal funds in plain, where payments for the exercise of such judgments are added to the legitimate costs of the transaction. We agree with the court in *Zacher* that these are among the evils Congress sought to prevent by enacting the kickback statutes and

6

conclude that the indictments in this case adequately allege the crime of receiving kickbacks which Congress sought to proscribe in §§ 1395nn(b)(1) and 1396h(b)(1)." (*United States* v. *Hancock, supra*, 604 F.2d 999, 1001.)

Similarly, we believe that a fee paid to the referring physician under the circumstances presented would violate section 650. No matter how subtly disguised or ingeniously described, this arrangement for paying the physician would thwart the legislative design and public policy of proscribing unethical inducements involving potential harm to the patient. (See *Mason* v. *Hosta, supra,* 152 Cal.App.3d 980, 987.) Without a valid need for the referral to include an evaluation report, payment for the report by the corporation would be prohibited by the statute.

In answer to the question presented, therefore, we conclude that where physicians form a professional corporation to which other physicians refer their patients for the performance of pulmonary and cardiac stress tests, payment of a fee by the corporation to the referring physician for preparing an evaluation report of the referred patient's test data would violate section 650 where no legitimate reason would exist for the report to be prepared as part of the referral.

\*\*\*\*\*

7