Lydia **LEWIS, etc., et alia, Plaintiffs,**

v.

William **GRINKER, etc., et alia, Defendants.**

No. CV–79–1740.

United States District Court, E.D. New York.

April 23, 1987.

Main Street Legal Services by Janet M. Calvo, Bayside, N.Y., and Washington Square Legal Services, Inc. by Lynn M. Kelly, and Legal Aid Soc. by Arthur J. Fried, New York City, for plaintiffs.

Peter Zimroth, Corp. Counsel of the City of New York, by Michael Young, New York City, for City defendants.

Robert Abrams, Atty. Gen. of the State of N.Y. by Marion Buchbinder, New York City, for State defendants.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Charles Kleinberg, Brooklyn, N.Y., for Federal defendants.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

This is a class action in which plaintiffs seek a permanent injunction and declaratory judgment authorizing payment of medical benefits to non-legal permanent resident ("non-LPR") aliens in New York State. The matter is before the Court on the federal defendants' motion for reconsideration of this Court's decision in *Lewis v. Gross*, 663 F.Supp. 1164 (E.D.N.Y. 1986), granting summary judgment on behalf of the plaintiff class.[1]

The facts in this case have been recently recited by the Court in its decision dated March 5, 1987, covering plaintiffs' motion for a preliminary injunction. *See Lewis v. Grinker*, No. 79–1740 (E.D.N.Y. March 5, 1987) [Available on WESTLAW, DCT database]. Therefore, only the following brief restatement is necessary for purposes of the present motion.

On July 14, 1986, this Court issued a Memorandum and Order which, among other things, determined that a 1973 regulation of the Secretary of Health and Human Services (the "Secretary"), 42 C.F.R. § 435.402(b), establishing alienage requirements for medical eligibility, was not authorized under the Medicaid statute, 42 U.S.C. §§ 1396 *et seq.*[2] Before final judgment was entered on that decision, however, Congress passed the Omnibus Budget Reconciliation Act of 1986 ("OBRA"), Pub.L. No. 99–509, *reprinted in* U.S. Code Cong. & Admin. News (100 Stat. 1874) (Dec. 1986), which contained new provisions concerning the eligibility of aliens for Medicaid benefits.[3] Section 9406 of OBRA has a direct impact on the Court's earlier decision since it provides statutory authority for imposing alienage restrictions on Medicaid eligibility for non-emergency medical care. Under the new law, eligibility for Medicaid is restricted to aliens who are either lawful permanent residents or otherwise permanently residing in this country under color of law, except where the alien is otherwise qualified for Medicaid and has an emergency medical condition.

Following the Court's invitation to brief the effects of this new legislation on the resolution of this case, the Secretary brought the present motion to vacate this Court's July 14 decision. First, the Secretary argues that no injunctive or other prospective relief should be granted because the OBRA amendments explicitly authorize the standard contained in the Secretary's challenged regulation. Second, the Secretary seeks to be relieved from any potential retroactive damage award on the ground that the legislation ratified the Secretary's prior use of alienage requirements. For the reasons set forth below, the Secretary's first request is granted and the second request is denied.

■ Relying on the doctrine that a court is bound to apply the law in effect at the

---

1. Since no final judgment has been entered in this case, the decision whether or not to reconsider a non-final order is within the plenary power of this Court. *See Campos v. Puerto Rico Sun Oil Co.*, 536 F.2d 970, 972 n. 6 (1st Cir. 1976); 7 J. Moore, *Federal Practice* ¶ 60.20.

2. The decision also partially invalidated the companion New York State regulation, 18 NYCRR § 349.3.

3. New provisions concerning Medicaid eligibility of aliens were also included in the Immigration Control and Reform Act of 1986 ("ICRA"), Pub.L. No. 99–603, *reprinted in* U.S. Code Cong. & Admin. News (100 Stat. 3359) (Dec. 1986). The ICRA amendments, however, do not have an immediate impact on the Court's prior decision and do not form the basis for the Secretary's present motion.

time of rendering its decision, *see, e.g.,* *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 2016–18, 40 L.Ed.2d 476 (1974), the Secretary argues that the Court should refrain from entering any final judgment enjoining enforcement of 42 C.F.R. § 435.402(b), since the regulation's language now appears verbatim in § 9406(a) of OBRA. In response, plaintiffs concede that § 9406(a) applies prospectively as of its effective date of January 1, 1987. Since the language of § 435.402(b) does not preclude the coverage for emergency care provided in § 9406 and since the Secretary's new Medicaid manual explicitly provides for such care, *see Lewis v. Grinker, supra,* slip op. at 5–7, 28–32 (March 5, 1987), it is clear that a final judgment ought not enjoin future enforcement of 42 C.F.R. § 435.402(b).[4]

The question remains, however, what effect the OBRA amendments have on Medicaid eligibility prior to January 1, 1987. The Secretary argues that no relief should be awarded for any period before January 1, 1987, on the ground that Congress ratified the Secretary's prior use of alien restrictions when it passed the OBRA amendments. In essence, the Secretary's position is that, when Congress passed OBRA, it only intended to expand Medicaid coverage by providing coverage for emergency care and assumed that alienage restrictions were already in place by virtue of 42 C.F.R. § 435.402(b). In response, plaintiffs characterize the OBRA amendments as explicitly rejecting any alienage requirements for emergency care while for the first time authorizing restrictions based on alienage for non-emergency care. Plaintiffs contend that the Secretary is seeking retroactive application of OBRA since the amendment did not go into effect until January 1, 1987.

Although the Secretary contends that he does not seek retroactive application of OBRA, it may be useful to discuss the Secretary's argument in the context of the case law on retroactivity. In *Bennett v. New Jersey,* 470 U.S. 632, 105 S.Ct. 1555,

84 L.Ed.2d 572 (1985), a case cited by none of the parties, the Supreme Court made clear that, when, as here, legislation affects substantive rights, *Bradley* does not impose a presumption in favor of retroactive application of the statute. *Bennett* involved the question of whether substantive provisions of the 1978 amendments to Title I of the Elementary and Secondary Education Act should apply retroactively in determining whether Title I funds were misused during the years 1970–1972. New Jersey sought retroactive application of the more liberal eligibility criteria contained in the 1978 amendments, and the Third Circuit, relying on *Bradley,* granted such relief. *State of New Jersey Dept. of Ed. v. Hufstedler,* 724 F.2d 34 (3d Cir.1984). In reversing the Court of Appeals, the Supreme Court looked to both the substantive nature of the obligations involved and the "manifest injustice" exception contained in *Bradley* itself. The Court explained:

> "[T]he presumption announced in *Bradley* does not apply here. *Bradley* held that a statutory provision for attorneys fees applied retroactively to a fee request that was pending when that statute was enacted. This holding rested on the general principle that a court must apply the law in effect at the time of the decision ... which *Bradley* concluded holds true even if the intervening law does not expressly state that it applied to pending cases.... *Bradley,* however, expressly acknowledged limits to this principle. 'The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that has matured or become unconditional.' .... This limitation comports with another venerable rule of statutory interpretation, i.e, that statutes affecting substantive rights and liabilities are presumed to have prospective effect."

105 S.Ct. 1560, *quoting Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. The Court then

---

**4.** Of course at sometime in the future, the Secretary will have to promulgate new regulations implementing its obligation to provide emergency medical care to all eligible persons regardless of their alien status.

concluded that, absent a clear indication to the contrary in the relevant statutes or legislative history, changes affecting substantive rights and liabilities under federal grant programs are presumed to have only prospective effect. *Id.* 105 S.Ct. at 1561.

In the present case, the Secretary does not suggest that Congress expressed an intent to apply OBRA retroactively, but rather argues that Congress intended the January 1, 1987 effective date to apply only to those provisions providing emergency medical care for otherwise eligible persons. As for the other provisions restricting eligibility of aliens, the Secretary contends that Congress intended to ratify the regulations struck down by this Court in its July 14 decision. To support this claim, the Secretary relies on the following language in § 9406(c)(1):

> "Except as provided in paragraph (2), the amendments made by this section shall apply to medical assistance furnished to aliens on or after January 1, 1987, without regard to whether or not final regulations to carry out such amendments have been promulgated by such date."

According to the Secretary, use of the phrase "without regard to whether or not final regulations ... have been promulgated" indicates Congress' concern that there might not be regulations in place implementing those portions of the amendments that "expand" Medicaid to cover emergency medical conditions by the time such coverage became effective. With respect to the alienage restrictions, however, the Secretary argues that there was no need for such concern since 42 C.F.R. § 435.402(b) was already promulgated when § 9406 was passed.

■ The Secretary's argument cannot be sustained for several reasons. First, the language upon which the Secretary relies expressly states that the "amendments made by this section" shall go into effect on January 1, 1987. Congress' use of the plural strongly suggests that it intended the entire section to go into effect on January 1, 1987. But more importantly, the Conference Committee report clearly indicates that, when Congress passed the OBRA amendment, it was acting in direct response to the decision of this Court striking down 42 C.F.R. § 435.402(b). *See* H.R. Conf.Rep. No. 1012, 99th Cong., 2d Sess. 399, *reprinted in* U.S. Code Cong. & Admin. News 1986, pp. 3607, 4044 (Dec. 1986).

Thus, notwithstanding the fact that this Court's order has not yet been reduced to judgment, Congress clearly assumed that 42 C.F.R. § 435.402(b) was no longer in effect when it passed the OBRA amendments. Accordingly, the only plausible explanation for the language in § 9406(c)(1) is Congress' concern that all of the new statutory provisions, those relating to both emergency and non-emergency care, would go into effect whether or not implementing regulations had been promulgated. Since it is clear that Congress intended all of § 9406 to go into effect on January 1, 1987, and there being no indication that Congress intended any of the provisions to have retroactive application[5], the *Bennett* presumption in favor of prospective application applies.

The Secretary, however, further argues that the OBRA amendments reflect Congress' attempt to "clarify" existing law and thereby serve to ratify his prior use of alienage restrictions. *See, e.g., Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir.1984); *Brown v. Marquett Savings & Loan Ass'n,* 686 F.2d 608, 615 (7th Cir.1982); *United States v. Tapert,* 625 F.2d 111, 121 (6th Cir.1980). To support this claim, the Secretary relies on the language of the Conference Committee cited above as well as statements in the House Budget Committee report on H.R. 5300, which, except for the provisions for emergency care, provide the basis for the OBRA amendments. Following a discussion of this Court's July 14 decision identical to the one cited above

---

**5.** An additional indication that Congress did not intend to apply the amendments retroactively can be drawn from the fact that Congress delayed the effective date of the legislation by several months. *See Yakima Valley Cablevision,* *Inc. v. FCC,* 794 F.2d 737, 747 (D.C. Cir.1986); *Fitzgerald v. Century Park, Inc.,* 642 F.2d 356, 358–59 (9th Cir.1981); *Buccino v. Continental Assurance Co.,* 578 F.Supp. 1518, 1527 (S.D.N.Y. 1983).

from the Conference Committee report, the Budget Committee report states:

"In response to the Court's invitation to clarify Congressional intent, the Committee bill amends the Medicaid statute to make it explicit that Federal financial participation is not available for State expenditures for aliens who are not lawfully admitted for permanent residence or permanently residing in the U.S. under color of law. The bill also provides that nothing in the Medicaid title should be construed to require a State plan to offer coverage to aliens who are not lawfully admitted for permanent residence or otherwise permanently residing in the U.S. under color of law. The Committee intends that the Secretary and the States broadly interpret the phrase 'under color of law' to include all of the categories recognized by immigration law, policy and practice in effect at the time, including Cuban-Haitian entrants (as defined in paragraph 1 or 2A of section 591(e) of Public Law 96–422, as in effect on April 1, 1983)."

H.R.Rep. No. 727, 99th Cong., 2d Sess. 110–11, *reprinted in* U.S. Code Cong. & Admin. News 1986, pp. 3607, 3700–01 (Dec. 1986).

It is clear that Congress passed the OBRA amendments in response to this Court's ruling that the Secretary's regulation had no statutory basis. It is equally clear, however, that, when Congress made explicit its intent, it produced a statute that provides significantly greater coverage than had been provided to the plaintiff class members by the Secretary's regulation. Indeed, the provision for emergency medical care, in this Court's view, indicates that not only did Congress fail to ratify the Secretary's prior position but, to a large degree, repudiated the regulation.

The view is supported by the bill's evolution through the House and Senate. As noted above, the House version of the bill restricted Medicaid eligibility to those aliens who are legal permanent residents or otherwise permanently residing in this country under color of law ("PRUCL"). The Committee Report also specifically stated that it intended the Secretary to interpret "under color of law" broadly to include all of the categories recognized by immigration law, policy and practice. H.Rep. No. 727, *supra* at 111, U.S. Code Cong. & Admin. News 1986, p. 3701. The Senate version of the bill contained no provision restricting alien eligibility for Medicaid. The Conference Committee retained the House version but added the substantial modification providing for Medicaid reimbursement for emergency services, regardless of alien status. Thus, the final bill represents a compromise between what was in essence the Secretary's prior position and no alienage requirements at all. Thus, contrary to the Secretary's position, the legislative history cannot properly be read as a ratification of his prior position.

Moreover, the cases cited by the Secretary are inapposite to the present circumstances. In each of those cases, the court held that, when an existing statute is ambiguous or has been subject to conflicting interpretations, it is generally fair to assume that Congress intended to clarify the existing law, as opposed to creating new law (and by implication rejecting prior law).[6] *See Barnes, supra,* 749 F.2d at 1015; *Tapert, supra,* 625 F.2d at 120–21. Here, however, there was no pre-existing statute which even arguably authorized the Secretary's disputed regulation. To ratify such unauthorized administrative action, the "ratifying legislation must recognize that the actions involved were unauthorized when taken and must also expressly ratify those actions in clear and unequivocal language." *EEOC v. CBS,* 743 F.2d 969, 974 (2d Cir.1984). While Congress has done the former, the legislation's substantive provisions and prospective application make clear that it has not done the latter.

---

**6.** The theory behind the latter presumption is that Congress only acts with a purpose. *See* 2A C. Sands, *Sutherland Statutory Construction* ¶ 49.11, at 265–66. The fact that both interpretations can be argued has led courts to recognize that "the views of a subsequent Congress form a hazardous basis for inferring the intent on an earlier one." *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983).

Accordingly, the Secretary's motion to vacate this Court's earlier decision with respect to the availability to plaintiffs of retroactive relief for actions taken by the Secretary prior to January 1, 1987, is denied.[7]

SO ORDERED.

7. In reaching this decision, the Court expresses no opinion on plaintiffs' entitlement to retroactive monetary relief. This question, which raises substantial eleventh amendment issues, has yet to be fully briefed by the parties.