**UNITED STATES of America, Appellee,**

v.

**Bobby Lee WILLIAMS, Appellant.**

**No. 71-1735.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1972.

Decided July 26, 1972.

Daniel P. Reardon, Jr., St. Louis, Mo., for appellant.

Robert B. Schneider, Asst. U. S. Atty., Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., for appellee.

Before LAY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

A jury convicted Bobby Lee Williams on two counts of making false statements to a licensed firearms dealer in connection with the purchase of two firearms, violations of 18 U.S.C. § 922(a) (6). Williams appeals, contending that he was deprived of a fair trial because the prosecutor, through his questions and argument to the jury, revealed that a defense witness had invoked the Fifth Amendment when questioned before a grand jury about the firearms transaction. We reverse.

On May 25, 1971, appellant purchased two rifles from the Kroeger Family Center, a licensed firearms dealer located in Cape Girardeau, Missouri. In signing the federal firearms forms required for such transactions, appellant averred: 1) that he had not been convicted of a felony punishable by imprisonment for more than one year; and 2) that he resided at 19 North Frederick Street, Cape Girardeau, Missouri. At trial, counsel stipulated that, in 1970, appellant was convicted in Missouri of a felony punishable by imprisonment for more than one year.[1] The government presented evi-

---

1. Subsequent to appellant's trial on the firearms charge, the Missouri Supreme Court reversed appellant's state conviction. At trial and on appeal, appellant's counsel argued that appellant's statement regarding his prior record was not false because his state conviction was not final under Missouri law at the time of the firearms transaction. In light of our disposition of this case, we need not discuss this question, although we note authority contrary to appellant's position.

dence indicating that, at the time of the firearms transaction, appellant resided in Cairo, Illinois, a city located directly across the Mississippi River from Cape Girardeau, Missouri. Appellant testified that he actually lived at the Cape Girardeau, Missouri, address and not in Cairo, Illinois.

Testifying for the government, the sales clerk who sold the rifles said that appellant, accompanied by another person, asked several questions before purchasing the rifles. The clerk said that, for identification purposes, appellant produced his Missouri driver's license, which carried the 19 North Frederick Street, Cape Girardeau, Missouri, address. The clerk also said that he had read to appellant the entire firearms form, which included the following question and explanation:

Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year? (Note: The actual sentence given by the judge does not matter—a yes answer is necessary if the judge *could have* given a sentence of more than one year.)

Testifying in his own defense, appellant admitted that he purchased the rifles and that he signed the firearms forms. Appellant said, however, that he told the sales clerk that he had been convicted of a felony and had received a one-year sentence. He said that the sales clerk then explained to him that the conviction would not disqualify him as a firearms purchaser because the firearms law barred sales only to those who received a sentence of more than one year. Appellant said that, relying upon this information, he signed the form. Appellant's counsel argued to the jury that, in view of the information provided by the sales clerk, appellant's statement regarding his prior record was not intended or likely to deceive the

dealer, a necessary element of a § 922(a) (6) violation.

The man who accompanied appellant to Kroegers, Rev. Manker Harris, corroborated appellant's version of the facts. Harris said that appellant informed the sales clerk of his conviction and one-year sentence. He also said that the sales clerk responded with a statement that the question on the form referred only to sentences of more than one year.

On cross-examination of Harris, the prosecutor asked the following questions:

[Prosecutor] Now do you recall the date of September 8, 1971, when you appeared in front of the Federal Grand Jury in connection with this case?

[Harris] I recall appearing before a Federal Grand Jury on some date.

\* \* \* \* \* \*

[Prosecutor] I asked you about this event?

[Harris] And others, yes.

[Prosecutor] All right. On that occasion is it not a fact that you refused to answer any questions?

[Harris] On the ground it might tend to incriminate me; yes, sir; which is my constitutional right.

[Prosecutor] In other words, when I asked you a question concerning what occurred, when I asked a question concerning what occurred in the store when these guns were purchased, you refused to answer the question, is that correct?

At this point, defense counsel made the following motion out of the presence of the jury:

I ask that the jury be instructed to disregard the question. I object to the question. It is not of impeaching nature to show his having taken the Fifth Amendment. It is prejudicial only to the defendant. I ask that a

*See* United States v. Liles, 432 F.2d 18 (9th Cir. 1970); DePugh v. United States, 393 F.2d 367 (8th Cir.), cert. denied 393 U.S. 832, 89 S.Ct. 101, 21 L.Ed.2d 102 (1968).

mistrial be declared because of the prejudicial question and answer given to the question.

The trial court overruled the objection. Resuming the cross-examination, the prosecutor asked:

Now I want to ask you some specific questions that occurred at that particular grand jury hearing.

Defense counsel again objected, and the trial court sustained the objection.

In his closing argument, the prosecutor said:

I think the thing you have to consider about Harris is the fact that he is a close friend of defendant. He has known him for at least two years, or a year and a half. And second of all, and more importantly, is the fact that if his story is so true, and if it were true and defendant did what he said, would he therefore not have signed this, knowing all these facts. Why didn't he tell that to the grand jury?

In response to an objection by defense counsel, the trial judge ordered the statement to be stricken and told the jury to disregard the statement. Resuming his argument, the prosecutor persisted along the same line:

Well, I think that you should consider the statement that Rev. Harris has made to you with reference to his association with defendant and what, if any, information he gave the Government.

Defense counsel again objected and moved for a mistrial. The following discussion then occurred at the bench:

[Prosecutor] Judge, when I asked Rev. Harris a question as to what he said to the grand jury, the first question I asked, there was no objection made to it. I then proceeded to ask him another question. Then the Court admonished me not to go any further. Then I didn't go further. But the first statement is in evidence. It was not stricken from the record. I will not argue any more to the jury about it but I certainly feel that it is

in evidence and a part of the record. [The Court] It is not in evidence and let's quit talking about it. I am going to instruct the jury. The motion for mistrial is overruled. Let's get on.

The trial court then instructed the jury, as follows:

Members of the jury, you are instructed that the witness Mr. Harris, when he goes before a Federal Grand Jury or any other grand jury, has a perfect right to take the Fifth Amendment. And the fact that he took the Fifth Amendment and refused to testify about this incident cannot be considered in any way as impeaching testimony to what he had to say on the stand.

 We hold that the prosecutor, through his questions and argument relating to Harris' invocation of the Fifth Amendment, injected prejudicial error requiring reversal. The government argues that Harris' refusal to testify before the grand jury was inconsistent with his testimony exculpating appellant at trial and thus provided a proper ground for impeaching Harris' credibility. We find this argument untenable. Before the grand jury, Harris

[w]as a compelled, and not a voluntary, witness; * * * he was not represented by counsel; * * * he could summon no witnesses; and * * * he had no opportunity to cross-examine witnesses testifying against him. These factors are crucial in weighing whether a plea of the privilege is inconsistent with later exculpatory testimony on the same questions, for the nature of the tribunal which subjects the witness to questioning bears heavily on what inferences can be drawn from a plea of the Fifth Amendment. * * * Innocent men are more likely to plead the privilege in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings, where cross-examination and ju-

dicially supervised procedure provide safeguards for the establishing of the whole, as against the possibility of merely partial, truth. [Grunewald v. United States, 353 U.S. 391, 422–423, 77 S.Ct. 963, 983, 1 L.Ed.2d 931 (1957).]

The prosecutor's efforts to impeach Harris' credibility must be deemed improper under Grunewald. *See* United States v. Glasser, 443 F.2d 994, 1005 (2d Cir.), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971); United States v. Tomaiolo, 249 F.2d 683, 690–692 (2d Cir. 1957).

■ Anticipating an adverse ruling on this issue, the government presses for affirmance under the harmless error rule. We cannot apply that rule in this case. The trial court properly instructed the jury that, in order to establish an offense under § 922(a) (6),[2] the government was required to show that appellant knowingly made a false statement, *see* Cody v. United States, 460 F.2d 34 (8th Cir., 1972), and that the statement was intended or likely to deceive the dealer. If the jury believed appellant's version of the facts, it could have found that he had not knowingly made a false statement about his prior record, intending that statement to deceive the dealer. Harris' corroborating testimony was therefore crucial to the defense.[3] The prosecutor's efforts to weaken the force of this testimony through improper impeachment cannot be deemed harmless.

We recognize that the trial judge, through cautionary instructions, attempted to cure the error injected by the prosecutor. But, in view of the prosecutor's persistent efforts to present this improper evidence to the jury, we cannot say that the instructions provided sufficient protection for the accused in this case. We must also recognize "the practical and human limitations of the jury system." Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *see* United States v. King, 461 F.2d 53 (8th Cir., 1972).

■ Finally, the government argues that appellant's conviction must be affirmed because the jury could have found from the evidence presented that appellant falsely stated his address. We reject this argument. The trial judge instructed the jury that the government could sustain its burden of proof under each count by proving either that appellant falsely stated his criminal record or that appellant falsely stated his address. The jury returned a general verdict of guilty. We cannot assume from this verdict that the jury determined that appellant falsely stated his address. *See* Stromberg v. California, 283 U.S. 359, 367–368, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). Accordingly, we reverse appellant's conviction.

---

2. Section 922(a) (6) reads as follows:
 It shall be unlawful * * * for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

3. At trial, the prosecutor recognized that the jury's decision would turn upon a determination of credibility. He said:
 I think when you go back in your jury room the question is going to be who is telling the truth and what actually happened.