(No. 50638.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. EVERETT GODSEY, Appellant.

*Opinion filed December 4, 1978.*

RYAN and UNDERWOOD, JJ., dissenting.

James N. De Wulf, of Moline, for appellant.

William J. Scott, Attorney General, of Springfield, and Edward Keefe, State's Attorney, of Rock Island (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and James E. Hinterlong, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

After a jury trial in the circuit court of Rock Island County, defendant, Everett Godsey, was found guilty of five arson-related offenses, each of which involved the residence of defendant's brother-in-law, Thomas Crom. The jury entered separate guilty verdicts on the following charges: (1) February 1, 1976, arson; (2) February 9, 1976, burglary with intent to commit arson; (3) February 10, 1976, solicitation to commit arson; (4) February 13, 1976, arson; and (5) March 4, 1976, solicitation to commit arson. Defendant was sentenced to concurrent terms of 1 to 10 years' imprisonment for the February 1 arson, the February 9 burglary, the February 13 arson, and the March 4 solicitation. (No judgment of conviction was entered on the February 10 solicitation charge because the trial court deemed the solicitation merged in the completed offenses of burglary (February 9) and arson (February 13). The correctness of this conclusion is not before us.) Defendant appealed from the judgments entered on the verdicts, and the appellate court, in a 2-1 decision, affirmed (57 Ill. App. 3d 364). We granted the defendant leave to appeal.

We hold that, under the circumstances of this case, the State's references to defendant's wife's refusal to testify

before the grand jury were prejudicial to the defendant and constituted reversible error. Consequently, we do not consider the merits of other issues raised by defendant.

In *Grunewald v. United States* (1957), 353 U.S. 391, 1 L. Ed. 2d 931, 77 S. Ct. 963, the prosecution cross-examined a criminal defendant by asking the same questions which defendant had refused to answer upon the advice of counsel when he had appeared before the grand jury. The jury was instructed that the fifth amendment plea could be used only to reflect upon defendant's credibility, not to imply his guilt. The court held that a defendant's refusal to testify when compelled to appear before a grand jury was not sufficiently inconsistent with later exculpatory testimony to permit its use for impeachment purposes. In reversing the conviction and remanding for a new trial, the court emphasized the prejudice to the defendant which resulted from the likelihood that the jury impermissibly inferred from the defendant's invocation of the fifth amendment privilege that he was either guilty of a crime or committing perjury. *Grunewald v. United States* (1957), 353 U.S. 391, 421, 1 L. Ed. 2d 931, 952, 77 S. Ct. 963, 982.

In *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133, the court reached the same conclusion with regard to the impeachment of a defendant who had chosen to remain silent at the time of his arrest. There, it was held that the assertion, upon arrest, of the right to remain silent is not sufficiently inconsistent with later exculpatory trial testimony to permit using it for impeachment purposes. The court reasoned that a person's "failure to offer an explanation during the custodial interrogation can as easily be taken to indicate reliance on the right to remain silent as to support an inference that the explanatory testimony [during trial] was a later fabrication." (*United States v. Hale* (1975), 422 U.S. 171, 177, 45 L. Ed. 2d 99, 105, 95 S. Ct. 2133, 2137.) Again,

the court, in ordering a new trial, stressed the intolerably prejudicial impact on the jury, which would be likely to infer guilt from the previous silence.

The danger of prejudice to a criminal defendant also exists when the person impeached by prior silence is a defense witness. The situation first arose in *United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683. There, defendant was indicted for various crimes arising out of a bank robbery. Subsequent to the indictment, defendant's brother was called before the grand jury, where he invoked the fifth amendment and refused to testify. At defendant's trial, the brother was called as a defense witness. On cross-examination, the prosecution brought out the brother's refusal to testify before the grand jury and contended that the brother's prior assertion of the privilege against self-incrimination impeached his credibility because it was inconsistent with his exculpatory trial testimony. The court held that where a grand jury witness reasonably believes that he may be implicated in crime, his reliance on the constitutional privilege against self-incrimination is in no way inconsistent with later nonincriminatory testimony. The court, in determining that there was no basis for the impeachment, observed that reference to the grand jury testimony "would almost certainly lead the jury to think that [the brother] claimed the privilege before the grand jury because he was somehow connected with the robbery, for that is the almost inevitable result of the claim of the Fifth Amendment." (*United States v. Tomaiolo* (2d Cir. 1957), 249 F.2d 683, 692.) The court concluded that, because of the importance of the witness to the defense and because the witness was defendant's brother, the improper impeachment seriously prejudiced the defendant.

*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975, furnishes the most thorough inquiry into the propriety of impeaching a defense witness by referring to his prior

refusal to testify before the grand jury. In *Rubin,* the defendant was indicted on multiple counts related to the embezzlement of union funds. Two union organizers testified for the defense only to corroborate evidence which showed that defendant was responsible for disbursing funds for general organizing purposes. On cross-examination, the prosecution elicited from the two defense witnesses answers intended to show that their earlier refusal to testify before the grand jury was inconsistent with their corroboration of defendant's exculpatory position. The court first determined that the grand jury silence failed to convey the threshold inconsistency with the witnesses' exculpatory trial testimony that was necessary to permit the use of the silence to impeach their testimony. The court reasoned that if a grand jury witness justifiably believes that his testimony might supply evidence which could be used against him, his silence is "insolubly ambiguous." It may be nothing more than the witness' proper reliance on his constitutional privilege against self-incrimination, a privilege understandably invoked in grand jury inquiries by the innocent as well as by the guilty. As a result, no basis exists for the use of the grand jury silence for impeachment purposes. (Accord, *United States v. Williams* (8th Cir. 1972), 464 F.2d 927, 930-31; *United States v. Glasser* (2d Cir. 1971), 443 F.2d 994, 1005; *State v. Boscia* (1967), 93 N.J. Super. 586, 600-01, 226 A.2d 643, 650 (involving reference to a witness' refusal to waive the privilege before the grand jury).) This holding, of course, does not apply if a defense witness has conveyed the impression during direct examination that he willingly cooperated with the prosecution in all aspects of its investigation or that he gave the same testimony before the grand jury which he gave at trial. See *Doyle v. Ohio* (1976), 426 U.S. 610, 619 n.11, 49 L. Ed. 2d 91, 98 n.11, 96 S. Ct. 2240, 2245 n.11; *United States v. Sing Kee* (2d Cir. 1957), 250 F.2d 236, 240; *United*

*States v. Fairchild* (5th Cir. 1975), 505 F.2d 1378, 1383.

The *Rubin* court then discussed the risks of prejudice to the defendant which inevitably result from improperly using grand jury silence for impeachment purposes.

> "First, where the jury learns that the witness's silence was an exercise of the privilege against self-incrimination, there is a danger the jury will improperly infer guilt on the part of the witness and, depending on the circumstances, transfer that inference to the defendant. [Citations.] Second, without an understanding of the uncertainties a witness faces in testifying before a grand jury, a juror may well attribute undue significance to the fact a witness offered no response to the prosecutor's questions before that tribunal and may thereupon disbelieve the witness's trial testimony." (*United States v. Rubin* (5th Cir. 1977), 559 F.2d 975, 983.)

Despite its conclusion that the impeachment was improper, the court refrained from reversing the conviction because the testimony of the two witnesses was largely cumulative and only tangential to the theory of defense and because no possibility existed, under the circumstances, that any inference of the witnesses' guilt would be transferred to the defendant.

In the case at bar, it was the defendant's wife whose prior silence before the grand jury was the object of impeachment. Defendant's wife had been called by the defense primarily to rebut the uncorroborated testimony of defendant's ex-girlfriend, who had been a principal State's witness, and to establish an alibi for one of the offenses. On cross-examination, the prosecution sought to impeach her testimony by the following repeated references to her grand jury silence:

> "Q. I would like to call your attention to the 7th day of July 1976 in the morning on the fourth floor of

the Rock Island County Courthouse before the Rock Island County Grand Jury. Do you remember being called as a witness?

A. Yes, I do.

Q. Do you remember being sworn as a witness?

A. Yes, I do.

Q. By the foreman of the Grand Jury?

A. Yes.

Q. And do you remember whether or not I was questioning you?

A. Yes, you was.

Q. And there was a court reporter there too?

A. Yes.

Q. Isn't it a fact that I asked you the question, 'Do you know a person named Thomas Crom.' And that you answered, 'I refuse to answer on the grounds it might incriminate me.'

A. Yes, I remember.

Q. Did you say this?

A. Yes.

Q. And is it a fact that I asked, 'Is Thomas Crom your brother-in-law?' And you answered, 'I refuse to answer.'

A. Yes.

Q. Isn't it a fact that I asked you, 'Have you ever discussed with your husband the fires which occurred on the residence of Thomas Crom located at 102 15th Avenue, Silvis Heights, Illinois?' And you said, 'I refuse to answer for the same reason.'

A. Yes.

Q. Isn't it a fact that I asked you, 'Have you ever discussed with Ova Godsey the fires which occurred at that residence.' And you answered, 'I refuse to answer.'

A. Yes.

Q. Isn't it a fact that I asked you, 'Does your husband own a shotgun.' And you answered, 'I refuse to answer.'

A. Yes.

Q. Isn't it a fact I asked you, 'Has your husband ever gone hunting?' And you answered, 'I refuse to answer.'

A. Yes.

Q. Isn't it a fact that I asked you, 'Do you know anything about any shooting which occurred on the night of February 16 or the early morning hours of February 17, 1976, involving your husband.' And you refused to answer.

A. Yes."

It is clear that there was no justification whatsoever for the admission of such testimony for impeachment purposes. Irrespective of the prejudicial impact on the jury, no attempt was made by the prosecution to establish any threshold inconsistency between the grand jury silence and the testimony of defendant's wife at trial. None of the questions which defendant's wife refused to answer before the grand jury were even asked of defendant's wife at trial. There was no suggestion that defendant's wife abused or improperly asserted her fifth amendment privilege before the grand jury. With no proper foundation for the use of the grand jury silence to impeach the credibility of the defendant's wife, we find that the admission of such testimony was error.

The State urges that the defendant waived consideration of this evidentiary error on appeal by failing to make a contemporaneous objection at trial. Supreme Court Rule 615(a) provides that errors "affecting substantial rights may be noted although they were not brought to the attention of the trial court." (58 Ill. 2d R. 615(a).) This court has stated that this rule, commonly referred to as the "plain error" rule, is to be applied as a means of ameliorating the harshness of the strict application of the waiver rule. (*People v. Howell* (1975), 60 Ill. 2d 117, 120-21; *People v. Manzella* (1973), 56 Ill. 2d 187, 195-96.) "[W]here the magnitude of the error may result in substantial prejudice to the right of the defendant to a fair trial, we have nevertheless on proper occasions considered the error as though it had been properly preserved for appeal." (56 Ill. 2d 187, 195.) Because the improper use of grand jury silence to impeach a defense witness may

substantially prejudice a defendant's right to a fair trial by leaving the jury with the indelible impression that the witness was implicated in criminal activity or because such implication might be transferred to the defendant, we will consider the impact of the error on defendant's trial.

Defendant maintains that reference to the defendant's wife's grand jury silence not only violated accepted rules of evidence and seriously prejudiced defendant, but that the error transgressed his constitutional rights. A defendant, however, is not entitled to the protection of the privilege against self-incrimination where the prosecutorial abuse is of another's exercise of the privilege. The privilege against self-incrimination is a personal one and cannot be vicariously asserted by a defendant through a defense witness. *United States v. Rubin* (5th Cir. 1977), 559 F.2d 975, 984. Also see McCormick, Evidence sec. 120, at 254-55 (2d ed. 1972).

Our holding, of course, does not preclude a defendant from predicating objection to the abuse of the defense witness' privilege on nonconstitutional grounds. Nor does it imply that the use of inadmissible impeachment testimony will be less prejudicial to a defendant than an error which violates a constitutional right. It merely means that before we can determine that a nonconstitutional error in the admission of impeachment testimony was reversible error, the defendant must show that the error could have contributed to his conviction. *People v. Sullivan* (1978), 72 Ill. 2d 36, 44; *People v. Weathers* (1975), 62 Ill. 2d 114, 120-21.

Here, we must appraise the prejudicial impact of the improper impeachment on four separate convictions. (Judgment was not entered on a fifth conviction.) We are mindful of the injustice which can result from conjecturing that improper testimony, which may have substantially influenced a jury to the prejudice of a defendant, did not contribute to the jury verdict. Under ordinary circum-

stances, we would review the offenses separately to determine which convictions, if any, may have resulted from the prejudicial impeachment use of defendant's wife's grand jury silence. Two factors, however, prevent us from using such an approach in this case.

First, the record reveals quite clearly that the State's trial strategy was to treat the separate offenses as projections of one common scheme. Because each of the offenses related to arson involving the residence of defendant's brother-in-law, most of the incriminating evidence which was introduced to prove the commission of one offense also tended to implicate the defendant in the commission of the other offenses. Moreover, admissions which defendant had made to State's witnesses of varying credibility tended to implicate him in a general vendetta against his brother-in-law, rather than to implicate him in the commission of any specific offense. The cumulative result was that weak, circumstantial cases against the defendant as to the February 1 arson and the February 9 burglary were bolstered by stronger evidence implicating the defendant in the February 13 arson and the March 4 solicitation.

It is in this context that we weigh the prejudicial impact of the improper impeachment. The testimony of the defendant's wife was not directed toward all of the charges, nor was it as critical to the defense of some charges as it was to the defense of others. The record discloses the following: The wife's testimony was not directed at all to the February 1 arson. Her testimony impacted on the February 9 burglary only to the extent that it tended to impeach the uncorroborated testimony of defendant's ex-girlfriend, who was the principal State's witness as to this offense. With regard to the March 4 solicitation, her testimony was of minimal force in rebutting the testimony of two State's witnesses. However, as to the February 13 arson, the defendant's wife was the

linchpin in the defense. Her testimony served the dual function of providing an alibi and of contradicting the testimony of the ex-girlfriend. In the summations, both the State and the defense pitted the testimony of the ex-girlfriend against the testimony of defendant's wife. The impeachment of defendant's wife not only undermined the defense of those charges to which she directly testified, but it tended to enhance the credibility of the ex-girlfriend, whose testimony permeated the entire case. Though the improper impeachment of defendant's wife was most prejudicial to the defense in regard to the February 13 arson, in such a trial setting, the prejudicial impact on the jury may well have spilled over onto the other charges. We do not dispute that there may be sufficient evidence to convict defendant of some of the offenses charged, but where we cannot determine with any assurance the extent to which a highly prejudicial error permeated the entire case, we cannot affirm any of the convictions.

Second, we cannot overlook in this case the likelihood that the jury not only inferred guilt on the part of defendant's wife from her refusal to testify before the grand jury, but that the inference was also transferred to the defendant. The likelihood is most acute in precisely this type of case; that is, one in which the relationship between the defense witness and the defendant is extremely close and one in which the defense witness' prior fifth amendment plea was directed toward the same criminal involvement as that for which defendant is on trial. Here, it would have been quite natural for the jury to draw the inference from a wife's refusal to testify before the grand jury that she was sheltering not so much her guilt, but that of her husband. When such inference is drawn, the prejudice to defendant would not be limited to only those charges which were affected by the improperly discredited trial testimony of defendant's wife. The

inference would directly stigmatize the defendant and prevent him from securing a fair and impartial trial on any of the charges.

For the reasons stated, we hold that the substantial prejudice caused by the improper impeachment of defendant's wife requires that the convictions be reversed, and that defendant be granted a new trial.

The judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Rock Island County for a new trial.

*Reversed and remanded.*

MR. JUSTICE RYAN, dissenting:

Because of the majority's extremely liberal application of the plain error principle, I must respectfully dissent.

We have only recently reaffirmed the heretofore generally accepted understanding that failure to object to erroneous trial proceedings constitutes a waiver of the error. The plain error doctrine is an exception to this general rule and is not meant to be a general saving clause to preserve all errors that may appear in the record, whether or not they have been brought to the attention of the trial court. (*People v. Precup* (1978), 73 Ill. 2d 7, 16.) This exception was carved out of the waiver doctrine as a *matter of grace* so that the court of review could take notice of errors appearing on the record which deprived the accused of a substantial means of enjoying a fair and impartial trial. (*People v. Burson* (1957), 11 Ill. 2d 360, 370-71.) In a sense, any trial error impinges upon a litigant's right to a fair trial. However, the deprivation which has heretofore commanded the court's attention under the plain error exception has been of such a serious nature as to be spoken of in the context of due process. Thus, in *Burson,* this court, in discussing the waiver rule, stated:

"However, this is a rule of administration and not

of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process." (11 Ill. 2d 360, 370.) This court has also held the plain error exception applicable in criminal cases where the evidence is closely balanced. (*People v. Pickett* (1973), 54 Ill 2d 280, 283.) Until a recent liberalization of the plain error exception by the appellate courts of this State, and by the majority of the court in this case, plain error was applied in only a limited number of cases and for the limited purpose of ameliorating the hardship occasioned by an unyielding adherence to the waiver doctrine.

Recently, plain error has been urged in a vast number of cases both in this court and in our appellate courts. The frequency of this occurrence can, to a great degree, be explained by the fact that in most criminal appeals the defendant is represented by counsel that did not represent him in the trial court. In reviewing the record, if appellate counsel finds error that was not preserved by objection in the trial court, he can only seek review of that error under the plain error exception. We cannot fault appellate counsel for urging plain error in these circumstances. Indeed, it is his duty to his client to do so. Considering the recent liberal interpretation of plain error in this State, it is doubtful if he could, in the face of such a record, file an *Anders* motion and brief informing the court that there are no meritorious issues to review. (See *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396.) However, the fact that the courts of review are being constantly requested to consider unobjected-to trial error as plain error does not require that our heretofore limited application of the exception be expanded. Just as the appellate advocate may consider it his duty to represent his client by urging plain error, I consider it our duty to define, with some exactitude, the boundaries of the exception. This we have heretofore done. I see no reason

for expanding these limits. Unless we adhere to the previously limited application of the plain error exception, the courts of review in this State will be asked to consider every unobjected-to trial error which the appellate advocate may uncover in combing through the record.

Inasmuch as a trial judge is not conversant with the defendant's trial counsel's trial plan, he cannot, in the absence of an objection, safely involve himself in every situation that may appear to constitute error. It is not at all unusual for a defense attorney to intentionally permit a prosecutor to conduct objectionable cross-examination and thereby open the door for a very helpful redirect examination. It is the obligation of counsel to present objections to procedures and to the admissibility of evidence. (ABA Standards, The Function of the Trial Judge, sec. 5.7 (1972).) The commentary to this standard states at page 71:

> "This standard is intended to admonish the trial judge to exercise self-restraint and fairness in permitting counsel for the prosecution and for the defense to perform their duties. Within appropriate limits they should be free from judicial interference."

Admittedly, the cross-examination set out in the majority opinion was erroneous, but in the absence of an objection the trial judge could not have safely terminated it. This cross-examination certainly opened the door for redirect examination concerning other conversations that may have taken place between the prosecutor and the defendant's wife, or some explanation by the wife for her refusal to answer, which would not otherwise have been admissible. So far as the trial judge would have known, defense counsel might have wanted to pursue redirect examination which such cross-examination made proper.

The opinion seems to hold that since the error was raised in the post-trial motion it was properly preserved although not objected to at the trial. To be properly

preserved, the error must be objected to at the trial *and* raised in the post-trial motion. The purpose of requiring the objection at the trial is to permit the trial court to prevent error or to correct it so that the defendant may receive a fair trial and so that it will not be necessary to grant a new trial. If the defendant does not raise the error until the post-trial motion, the error can only be corrected by the same sacrifice of judicial economy that would be involved by raising the issue for the first time on review; that is, by the granting of a new trial.

Also, by permitting the defendant to silently allow error to enter the record and then to raise the issue in a post-trial motion is, to a degree, permitting him to insure himself against an unsuccessful trial. Such a procedure permits the defendant to allow erroneous evidence to be admitted, unobjected to, knowing that he is creating an issue which he can later raise as a ground for a new trial should he be convicted.

I do not think that the decisions of this court should encourage such tactics. Permitting them to succeed is not playing fair with the trial judge and permits the defendant to gain the advantage of obtaining a reversal of his conviction based upon his own failure to act. (See *Dean v. Keith's & Ralph's Tavern, Inc.* (1975), 25 Ill. App. 3d 970, 972.) I would hold that the defendant has waived the error now complained of by failing to object thereto during the trial.

MR. JUSTICE UNDERWOOD joins in this dissent.