**UNITED STATES of America ex rel. Larry KURENA, Petitioner,**

**v.**

**James THIERET, Respondent.**

**No. 86 C 6384.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1987.

---

Julius L. Echeles, Chicago, Ill., for petitioner.

Scott Graham, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Larry Kurena ("Kurena") has filed a petition for a writ of habeas corpus (the "Petition") under 28 U.S.C. § 2254 ("Section 2254") against Warden James Thieret ("Thieret") of the Menard Correctional Institution. As called for in Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] Thieret has answered the Petition and filed a transcript of the proceedings in the state trial court.[2]

---

1. All further citations to those Rules will simply take the form "Rule—."

2. That transcript comprises four volumes (cited "Vol.—at —") containing the common law

For the reasons stated in this memorandum opinion and order, this Court finds no evidentiary hearing is required and dismisses Kurena's Petition on the merits (see Rule 8(a)).

## Procedural Background

John Taylor ("Taylor") and Emil Lauridson ("Lauridson") were fatally stabbed early in the morning of March 13, 1976 in an alley behind Hi-Low Liquors, a neighborhood tavern. Kurena, his brother Brian ("Brian") and his friends Jim Damron ("Damron") and Jim Grady were the only persons besides Taylor and Lauridson who were in the alley when the stabbing occurred (Vol. II at 682–84). Both Kurena and Damron were charged by indictment with two counts of murder, and Kurena received a separate jury trial on those charges in 1978.

Of those present when Taylor and Lauridson were stabbed, only Brian testified at his brother's trial.[3] He did not see who actually did the stabbing, nor did he see either his brother or Damron with a knife that night (Vol. II at 686–93).

Rosemary Severs ("Severs") was the key witness against Kurena. She had spent the evening of March 12, 1976 with Kurena and was waiting for him in a car nearby when the stabbings occurred. Severs testified Kurena had a large knife from his home with him that evening and that knife closely resembled the one found by police in the alley shortly after Taylor and Lauridson were killed (Vol. I at 335–37). She also said Kurena ran back to the car a few minutes after going into the alley and said he had just stabbed two men, he didn't know why he did it, and he had left the knife in one victim's stomach (Vol. I at 341–43). Some of Severs' testimony was corroborated by other witnesses, but she alone testified (1) she saw Kurena with a knife and (2) Kurena admitted to stabbing two men in the alley. Severs admitted she had been drinking beer that evening and had also taken a pill—a "downer" (Vol. I at 329, 347).

Kurena's trial defense consisted of attempting to discredit Severs' testimony and to establish that Taylor and Lauridson were stabbed by a right-handed assailant (Kurena is left-handed, but Damron is right-handed). Kurena's attorney called several witnesses who saw Severs drinking and taking a pill that evening. Dr. Shalgos, a forensic pathologist, testified Taylor and Lauridson's wounds were probably caused by an assailant using his or her right hand (Vol. II at 746).

Kurena was found guilty by the jury on both murder charges. He appealed, contending in part:[4]

1. Brian had been improperly cross-examined as to his post-arrest silence.

2. In closing arguments, the prosecution made improper statements about the presumption of innocence.

3. During their deliberations, the jury improperly conducted experiments with a cardboard knife.

Kurena's conviction was affirmed, *People v. Kurena*, 87 Ill.App.3d 771, 43 Ill.Dec. 277, 410 N.E.2d 277 (1st Dist.1980). Even though the Appellate Court found the prosecutor's cross-examination of Brian and its incorrect references to the presumption of innocence to be improper, those errors did not cause reversal because the Appellate Court also found they did not actually prejudice Kurena (and that court also found Kurena had waived any objection to Brian's questioning, because the issue had not been raised either during the cross-examination or in the post-trial motion). Leave to appeal to the Illinois Supreme Court was denied.

Kurena then sought a hearing under the Illinois Post-Conviction Hearing Act, Ill.

record, the Circuit Court trial transcript and the Circuit Court post-conviction proceedings.

**3.** Damron was available to testify but was not called as a witness. Grady's whereabouts were unknown at the time of Kurena's trial.

**4.** All of Kurena's numerous other contentions of error were rejected by the Appellate Court and none has been renewed in the Petition.

Rev.Stat. ch. 38, ¶¶ 122–1 to 122–7, claiming in principal part (Vol. III at 2–8):[5]

1. Kurena was denied due process when the trial judge interjected and examined several defense witnesses, assertedly showing his belief in Kurena's guilt.

2. Kurena was denied his constitutional right to present exculpatory evidence when the trial court refused to admit testimony as to an out-of-court confession by Damron.

3. Kurena was denied due process when the prosecution called attention to his failure to testify during closing arguments.

4. Kurena was denied a fair trial because the prosecution misled the jury regarding his presumption of innocence during closing argument.

5. Kurena was denied the effective assistance of counsel during his appeal because his appellate counsel failed to raise issues 1–3 on appeal.

That petition was denied summarily by the Circuit Court November 3, 1983 (Vol. IV at 2–3). Kurena appealed that denial to the Illinois Appellate Court, which affirmed in an unpublished opinion, *Kurina [sic] v. People of the State of Illinois*, 137 Ill. App.3d 1154, 101 Ill.Dec. 808, 499 N.E.2d 175 (1st Dist.1985). Kurena's petition for leave to appeal was denied March 5, 1986 by the Illinois Supreme Court.

*Theories and Standards*

Kurena's Petition raises eight grounds for habeas relief:

1. His Sixth Amendment right[6] to confront and cross-examine witnesses was violated when jurors constructed and experimented with a cardboard knife during their deliberations (the "jury-misconduct claim").

2. His due process right to a fair trial was violated when the prosecutor cross-examined Brian as to the latter's post-arrest silence (the "improper-cross-examination claim").

3. He was denied a fair trial when the trial judge improperly questioned several of his witnesses, so as to create the impression the court agreed with the prosecution (the "trial-judge-questioning claim").

4. He was denied his right to present exculpatory evidence when the trial court improperly excluded testimony that Damron had confessed to stabbing Taylor and Lauridson (the "improperly-excluded-testimony claim").

5. His Fifth Amendment rights were violated by the prosecutor's statements during closing argument as to Kurena's invocation of his constitutional rights. Those comments assertedly communicated to the jury, by implication, that Kurena had invoked his right to remain silent (the "Fifth Amendment claim").

6. He was deprived of a fair trial when the prosecutor improperly stated the law regarding Kurena's presumption of innocence, in effect shifting the burden of proof from the prosecution to Kurena (the "presumption-of-innocence claim").

7. He was denied the effective assistance of counsel on his direct appeal, because his counsel failed to raise Grounds 3, 4 and 5 on his direct appeal (the "ineffective-assistance-of-counsel claim").

8. He was denied due process because of the combined effect of any or all of the alleged errors in Grounds 1 through 6 of his Petition (the "combined-error claim").

Those contentions must be examined in light of the controlling principles recently restated in *Burrus v. Young*, 808 F.2d 578, 580 (7th Cir.1986) (citation omitted):

A federal court may not grant habeas relief to a petitioner in state custody unless the custody violates federal statutory or constitutional law.... "Federal

---

**5.** Kurena also contended he was denied his constitutional right to make a knowing election between sentencing procedures, a claim he had also raised on direct appeal. That claim is not pursued in the Petition.

**6.** As has become customary (because convenient, even though conceptually inaccurate), this opinion will refer directly to Bill of Rights provisions rather than to the Fourteenth Amendment (the sole source of constitutional safeguards against state action).

courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982).

None of Kurena's claims, either alone or in combination, amounts to an error of "constitutional dimension" entitling him to habeas relief.

### Exhaustion

■ Thieret does not dispute Kurena has exhausted his state remedies as required by Section 2254(b). Because this Court may raise the issue sua sponte and dismiss Kurena's petition if there are unexhausted claims (*Granberry v. Mizell*, 780 F.2d 14, 15–16 (7th Cir.1985)), a brief look at that question is in order.

Kurena raised his jury-misconduct, improper-cross-examination and presumption-of-innocence claims in his direct appeal from his conviction, and those claims were rejected by the Appellate Court. Every other claim was raised in Kurena's post-conviction relief petition: his trial-judge-questioning, improperly-excluded-evidence, Fifth Amendment, presumption-of-innocence and ineffective-assistance-of-counsel claims. Each of those claims was summarily rejected by the Circuit Court. That ruling was affirmed on appeal (though the Appellate Court dealt expressly only with Kurena's ineffective-assistance-of-counsel claim).

That leaves only Kurena's combined-effect claim as never having been tendered to the state courts. But "that very failure constituted a waiver of the claim under state law, precluding [Kurena] from returning to state court to seek relief on that ground." *United States ex rel. Winters v. Mizell*, 644 F.Supp. 782, 788 (N.D.Ill.1986).

In sum, exhaustion poses no bar to the current Petition. This opinion moves on to other issues.

### Waiver

■ Thieret argues Kurena has waived four of his claims. As Thieret correctly points out, Kurena failed to raise his improper-cross-examination claim in his post-trial motion, and he failed to raise his trial-judge-questioning, improperly-excluded-evidence and Fifth Amendment claims on the direct appeal from his conviction.[7] Under Illinois law such omissions generally constitute a waiver of such claims for review on their merits. *United States ex rel. Villa v. Fairman*, 810 F.2d 715, 717 (7th Cir.1987); *Kurena*, 87 Ill.App.3d at 777–78, 43 Ill.Dec. at 283, 410 N.E.2d at 283; *Goins v. People*, 103 Ill.App.3d 596, 598, 59 Ill.Dec. 312, 314, 431 N.E.2d 1069, 1071 (1st Dist.1981). And when such a waiver forecloses the state appellate court from deciding the merits of a constitutional claim, a federal habeas petitioner must show both *cause* for the procedural default and resulting *actual prejudice* to obtain federal review of that waived claim. *Murray v. Carrier*, — U.S. —, 106 S.Ct. 2639, 2644–48, 91 L.Ed.2d 397 (1986).[8]

As for Kurena's improper-cross-examination claim, he has not asserted either cause or prejudice in connection with his not having raised that issue at the trial court level. Instead Kurena argues such a showing is unnecessary because the Appellate Court actually addressed the issue on its merits.

■ That, however, overstates the case. True enough, no cause-and-prejudice showing is required when a state appellate court rules *only* on the merits of a constitutional claim and does not address a possible state procedural bar. *Goins v. Lane*, 787 F.2d

---

7. Thieret does not mention Kurena's probable waiver of his combined-effects claim. Because waiver (unlike exhaustion) may not be raised by a district court sua sponte (*Barrera v. Young*, 794 F.2d 1264, 1269 (7th Cir.1986)), this opinion will reach the merits of that claim.

8. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) originally imposed the "cause and prejudice" requirement on proce-

dural defaults at the trial level. *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354 (7th Cir. 1983) (en banc) extended the "cause and prejudice" requirement to procedural defaults during the direct appeal of a conviction. *Reed v. Ross*, 468 U.S. 1, 11, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984) and *Murray* have since affirmed our Court of Appeals' analysis in *Spurlark* (see *Villa*, 810 F.2d at 717).

248, 251 (7th Cir.1986). But here the Appellate Court ruled both on the merits of Kurena's cross-examination claim (finding no resulting prejudice) *and* on the waiver question (finding Kurena had waived the claim by failing to object at trial or post-trial): *Kurena,* 87 Ill.App.3d at 777–78, 43 Ill.Dec. at 283, 410 N.E.2d at 283.

*Goins,* 787 F.2d at 251 addressed just that kind of situation:

[F]ederal habeas-corpus relief is precluded if the state appellate court affirms a state trial court decision on the "twin grounds" of (1) lack of merit for the constitutional claim and (2) the petitioner's failure, without justification, to comply with a state procedural rule, unless of course the petitioner demonstrates in federal court cause and prejudice for the procedural default.

Because Kurena has not even tried to show cause for his procedural default, the Appellate Court's alternative reliance on the state procedural rule is an independent state law ground barring federal review of his cross-examination claim. *Farmer v. Prast,* 721 F.2d 602, 606 (7th Cir.1983).

■ Kurena has one more string to his bow. He points out (again correctly) that a cause-and-prejudice showing is not compelled in extraordinary cases where a constitutional error has probably caused the conviction of an innocent man. *Murray,* 106 S.Ct. at 2650. This case does not fill that bill. Although it was error for the prosecution to cross-examine Brian as to his post-arrest silence (*United States v. Rubin,* 559 F.2d 975, 981–83 (5th Cir.1977)), that error did not rise to the constitutional level: It did not deprive Kurena of a fundamentally fair trial (see *id.* at 983–84; cf. *People v. Godsey,* 74 Ill.2d 64, 75–76, 23 Ill.Dec. 117, 122–23, 383 N.E.2d 988, 993–94 (1978)).[9]

Thieret's other waiver argument—based on Kurena's failure to assert some of his claims on direct appeal—fares less well. Under Illinois law such an omission can indeed cause a waiver of those claims in any post-conviction petition, but that bar is not absolute. *Goins v. People,* 103 Ill. App.3d at 598, 59 Ill.Dec. at 314, 431 N.E.2d at 1071. At the Circuit Court level the state did urge a waiver defense to Kurena's trial-judge-questioning, improperly-excluded-evidence and Fifth Amendment claims (Vol. III at 9). Although the Circuit Court's summary dismissal of Kurena's petition did not expand on its reasoning, it appeared to do so entirely on the merits of Kurena's claims (Vol. IV at 2–3).

■ Kurena's appeal from that ruling presented the claims to the Appellate Court only indirectly: He contended his counsel's failure to raise those claims on direct appeal amounted to ineffective assistance of counsel. Nonetheless the Appellate Court (in the course of treating Kurena's ineffective-assistance-of-counsel claim) considered the merits of two of Kurena's underlying arguments (the trial-judge-questioning and improperly-excluded-evidence claims) and found no prejudicial error. As for the Fifth Amendment claim, the Appellate Court chose to reject it because of insufficient evidence, rather than relying on Kurena's procedural default as a waiver of the claim.

In sum, the state courts turned down Kurena's trial-judge-questioning, improperly-excluded-evidence and Fifth Amendment claims on their merits and did not even mention waiver. Consequently cause-and-prejudice notions do not enter the equation, and this Court may also examine the merits of those claims. See *Goins v. Lane,* 787 F.2d at 251. Only Kurena's improper-cross-examination claim falls by the wayside because of his earlier procedural default. This opinion goes on to treat his remaining seven claims on their merits.

### Jury Misconduct

Kurena's post-trial motion presented the trial judge with affidavits from several jurors, who reported several jury members

9. *Godsey* reversed a conviction because of the improper cross-examination of the defendant's wife about her silence before a grand jury. Though *Godsey* found the prejudice to defendant required reversal, the Illinois Supreme Court expressly found such prejudice was not a constitutional error (74 Ill.2d at 73, 23 Ill.Dec. at 126, 383 N.E.2d at 992).

had constructed a cardboard knife during their deliberations. That knife was used by the jurors to evaluate trial testimony as to whether Taylor and Lauridson's assailant was left- or right-handed and whether such a knife could be hidden in someone's sleeve or could be seen from a certain distance (Vol. I at C155, C157–64). Kurena urges the jury's consideration of such "extrinsic evidence" violated his Sixth Amendment right to confront all the evidence against him.

■ When jurors actually see or hear evidence not presented at trial, any resulting conviction must be overturned unless that extrinsic evidence was clearly not prejudicial. *United States v. Renteria*, 625 F.2d 1279, 1284 (5th Cir.1980). That rule, however, must be balanced against the need to allow juries to use their common sense and experiences when reaching their verdicts. *United States v. Avery*, 717 F.2d 1020, 1026 (6th Cir.1983).

Thus *United States v. Castello*, 526 F.Supp. 847, 850–51 (W.D.Tex.1981) granted a new trial where a juror conducted an independent ballistic test and reported his results to the entire jury. That test was held to have produced extrinsic evidence to defendant's prejudice. By contrast, *United States v. Hephner*, 410 F.2d 930, 936 (7th Cir.1969) upheld a conviction where a juror disguised himself in the same way the defendant allegedly had during a robbery. That experiment, carried out to enable the jury to decide whether it was possible to identify someone so disguised, was held a legitimate use of "common experiences and illustrations" by a jury.

■ Kurena's jury could legitimately have used the actual knife, which was admitted as evidence at trial, to conduct the "experiments." Such actions would be proper evaluation by the jury of testimony given at trial (see *Avery*, 717 F.2d at 1026).[10] Safety reasons caused the trial judge to keep the real knife from the jury room, and even if that had not been done, common sense should have caused the jurors to use something besides the actual knife when recreating the assaults on the victims. From the record (Vol. I at C160) the cardboard knife was similar in size to the actual knife in evidence. Plainly Kurena's Sixth Amendment rights were not violated by either the cardboard knife or the jury's experiments.[11]

### Questioning by Trial Judge

Kurena claims the trial judge's questioning of defense witnesses conveyed to the jury the idea the judge was biased in favor of the prosecution, thus depriving Kurena of his due process right to a fair trial. Although the judge questioned two other defense witnesses,[12] Kurena challenges only his questioning of Dr. Shalgos and James Leenheer ("Leenheer").

Dr. Shalgos was a key witness for Kurena, because he was willing to testify Taylor's and Lauridson's wounds were probably inflicted by an assailant using his or her right hand. Leenheer, who drove Kurena to and from the scene of the stabbings, was called mainly to discredit Severs by testifying she was drunk the night of the stabbings.

■ It is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony. *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942).

10. Dr. Shalgos, called by Kurena, testified extensively as to whether Taylor's and Lauridson's wounds could have been caused by a left-handed individual (Vol. II at 746–57). In addition, Severs testified Kurena hid the knife up his sleeve while they were driving to Hi-Low Liquors (Vol. I at 337), and Shirley Shannon testified she saw Damron punch Lauridson (Vol. II at 525) but did not see him with a knife (Vol. II at 538).

11. Surely the situation is no different from what would have been the case (1) had the actual knife, with the blade guarded to avoid risk, been sent into the jury room or (2) had any counsel possessed the foresight to have prepared a harmless cardboard facsimile for delivery to the jury with the other exhibits. In either such event the jury would have been entitled to make the identical use of the exhibit that their self-help efforts permitted. Nothing about what actually transpired rises to the level of constitutional error.

12. Shirley Shannon (Vol. II at 536–37) and Jerry Pittman (Vol. II at 624–25).

Here the trial judge questioned Dr. Shalgos for the latter purpose. Because the doctor had not actually examined the victims' bodies, his testimony called upon him to answer a long hypothetical question. Kurena's counsel was forced to modify his underlying hypotheses because of objections by the prosecution, and there was some resulting confusion as to the actual nature of Dr. Shalgos' testimony and as to the assumptions that formed the basis of that testimony. That confusion was alleviated by the trial court's neutral questions (Vol. II at 756–57). If those questions "prejudiced" Kurena, it was only because they clarified the doctor's opinion that the right hand was used in the stabbing, but it was possible (though less likely) the fatal wounds could have been inflicted by a left-handed person using his or her right hand. That kind of "prejudice," which left it entirely to the jury to find where the facts lay, is really nonprejudice in constitutional terms.

■ Leenheer testified Severs was "high" the night the stabbings occurred. Kurena's counsel failed to establish Leenheer's basis for giving such an opinion. When the trial court attempted to determine what Leenheer meant by "high" it became clear Leenheer really had no basis for making such an observation (Vol. II at 560–61). After a motion by the prosecution, that part of Leenheer's testimony was excluded.

Kurena argues *United States v. Spears*, 558 F.2d 1296 (7th Cir.1977) (per curiam) condemns such conduct by the trial judge and requires a new trial for Kurena. But *Spears* involved a trial court's numerous derogatory remarks about a defendant's counsel during closing arguments, plainly causing the defendant severe prejudice and depriving him of a fair trial. Nothing in Kurena's trial even approached the judge's conduct in *Spears* in tone or content. In fact, the trial court's neutral questions, by clarifying Leenheer's and Dr. Shalgos' tes-

timony, really assured the fairness of Kurena's trial. He cannot claim prejudice simply because the trial court prevented the jury from considering unclear or inadmissible evidence.

### Excluded Testimony

Kurena attempted to call David Latronica ("Latronica"), who was willing to testify Damron confessed to him that he (Damron) had stabbed Taylor and Lauridson (Vol II at 604–05). That testimony was excluded by the trial court (Vol. II at 611) because under Illinois law (*People v. Bowel*, 111 Ill.2d 58, 66, 94 Ill.Dec. 748, 752, 488 N.E.2d 995, 999 (1985)) it was inadmissible hearsay—an out-of-court declaration by an individual who was available to testify. Kurena claims that exclusion violated his constitutional right to present exculpatory evidence.

■ State evidentiary rules barring hearsay testimony may indeed violate a defendant's constitutional rights unless such rules are designed to exclude truly untrustworthy testimony. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973). That case (*id.* at 299–300, 93 S.Ct. at 1047–48) recognized an evidentiary rule excluding out-of-court declarations made against the declarant's penal interest might legitimately serve such a valid purpose under some circumstances.

■ Just such circumstances existed here. Unlike the statement at issue in *Chambers*, Damron's statement was neither spontaneous nor really corroborated by other evidence. Moreover, Latronica's testimony did not carry the potential for the prosecutor's cross-examination of Damron—an important consideration where Damron himself was available as a witness. Though the trial judge commendably offered to make Damron a court witness (Vol. II at 610),[13] Kurena had chosen not to have him testify.[14] Had Damron been

---

**13.** That offer both (1) obviated any problem of impermissibly shifting the burden of proof to Kurena and (2) allowed Kurena to impeach Damron's testimony.

**14.** Damron had been available in the State's Attorney's office for interviewing and testimony the day before Kurena's lawyers proffered the Latronica testimony, but Kurena's lawyer made

called and invoked his Fifth Amendment rights, the court would have had the opportunity for possible reevaluation of his ruling as to Latronica's testimony—but Kurena cannot complain where his counsel's decisions as to trial strategy prevented that possibility.

Taking all those factors into account, it cannot be said that a state court rule regarding any testimony by Latronica as to Damron's out-of-court confession as inherently untrustworthy was constitutionally infirm. Kurena can hardly claim prejudice because of the exclusionary ruling when the declarant himself was made available to Kurena as a witness.

### Prosecutor's References to Kurena's Failure To Testify

During closing arguments the prosecution pointed out Kurena had received all his constitutional rights and proceeded to list several of those rights, including the right to a jury trial and the right to an attorney (Vol. II at 808). As would be expected during closing argument, the prosecutor also reviewed the evidence against Kurena. Unfortunately that summary included encroachment on a dangerous area: stating testimony by Severs was "uncontradicted and undenied" (Vol. II at 797, 801).

■■■ Of course any direct prosecutorial reference to Kurena's decision not to testify would have violated Kurena's Fifth Amendment rights under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). But the Fifth Amendment also forbids any *indirect* references to Kurena's silence (*United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir.1985) (citations omitted)):

> if "the language used was manifestly intended to be or was of such a character

that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify."

Accord, *United States ex rel. Adkins v. Greer*, 791 F.2d 590, 597 (7th Cir.1986).

Any general comments by the prosecutor about Kurena's having received all his constitutional rights could not have been understood by the jury as a reference to Kurena's failure to testify. Instead, those remarks were obviously intended to impress upon the jury that Kurena had received a fair trial and (according to the prosecution) should now be convicted of the charges against him.

But the cases teach that prosecutorial statements referring to evidence and testimony as "undisputed" are far more problematic. Such remarks must be viewed as (*Burke*, 756 F.2d at 1300 (citations omitted)):

> indirect references to the defendant's failure to testify where "[t]here were no persons other than the defendants who could have disputed the [prosecution witness'] testimony apart from alibi witnesses."

That doctrine calls for the kind of analysis this Court employed in *Winters*, 644 F.Supp. at 788–90: a detailed examination of the evidence said to be "uncontradicted," to see whether that characterization necessarily points to the defendant's not taking the stand.

Here Severs testified Kurena had a knife with him when they drove to Hi-Low Liquors, because of an earlier encounter he had with a man that evening at a bar across the street from Hi-Low Liquors (Vol. I at 337). Naturally Kurena could have disputed that testimony, but so too could have several others—including witnesses at Kurena's trial. In fact the prose-

no inquiry or effort to call him as a witness (Vol. II at 614). Plans for the trial had been made by a Monday, with an extensive conference on trial preparation, and with the State agreeing to cooperate by providing all witnesses needed by the defense (*id.* at 612). No request was made by defense counsel as to Damron before the Latronica issue arose on Friday, just as the evidentiary part of the case was coming to a close (*Id.*). At that point the trial judge

denied a continuance to a later date "for purposes of getting a witness that you could have taken affirmative action on when the trial began" (*id.* at 613), but he took a recess to allow defense counsel to try to reach Damron for testimony the same day (*id.* at 614). That kind of discretionary exercise of trial management by the state court judge implicates no constitutional concerns.

cutor claimed during closing arguments that Maria Pritchett and Leenheer (Kurena's own witness) had corroborated Severs' testimony (Vol. II at 797–99).[15]

Severs also testified Kurena admitted to stabbing two men in the alley when he ran back to Leenheer's car from the alley (Vol. I at 342–43). That testimony too could have been disputed not only by Kurena but by his own witness, Leenheer, who failed to do so (Vol. II at 556–57).[16] Indeed the prosecutor referred to Leenheer's testimony immediately after claiming Severs' testimony had not been contradicted (Vol. II at 801).

■■■ Thus both prosecutorial references to certain Severs' testimony as "undisputed" should not, in context, be deemed indirect references to Kurena's failure to testify (see *Burke,* 756 F.2d at 1302). Several witnesses other than Kurena could have disputed that testimony but instead corroborated (or did not contradict) Severs. In fact, the prosecutor referred to that other testimony immediately after saying Severs' testimony was "undenied." Kurena's Fifth Amendment rights were not violated by the prosecutor's remarks, and his Fifth Amendment claim fails.

### Presumption of Innocence

Kurena also faults another remark by the prosecutor, this one in reply to the closing argument of Kurena's counsel (Vol. II at 864):

> You are going to be instructed as to the presumption of innocence, but just remember one thing—the presumption of innocence stands on this conditionally, it's one of the precepts that we work with, but the presumption of innocence is not here to shield somebody that's guilty. It's to protect innocent people. Just keep that in mind in your deliberations, because every bit of evidence we have

put forth, and every bit of evidence that that man put forth on behalf of his client has helped take down that presumption of innocence, break down that presumption, brick by brick until there is no presumption of innocence at this point.

On direct appeal those remarks were found clearly erroneous (*Kurena,* 87 Ill.App.3d at 781, 43 Ill.Dec. at 286, 410 N.E.2d at 286), and Thieret does not now dispute that. Rather he argues (as the Appellate Court held) the remark was not sufficiently prejudicial as to deny Kurena a fair trial. In the habeas corpus context, this Court agrees.

■■■ Kurena is not entitled to habeas relief simply because the prosecutor misstated the law during closing argument. Kurena must show such misstatement probably misled the jury as to Kurena's presumption of innocence, so as to deprive him of a fair trial. See *United States v. Torres,* 809 F.2d 429, 435 (7th Cir.1987); *United States ex rel. Clark v. Fike,* 538 F.2d 750, 760 (7th Cir.1976).

■■■ That cannot be said here. Kurena's attorney first misstated the law as to the presumption of innocence during his own closing argument, and the trial court sustained the prosecutor's objection (Vol. II at 810). When the prosecutor later responded with his own misstatement,[17] Kurena's lawyer failed to object.

But that is not the whole story. Before the prosecutor's misstatement of the law, he told the jury the trial judge and not the prosecutor would actually instruct the jury as to the presumption of innocence (Vol. II at 864). In fact the trial judge did just that—and correctly—shortly after the prosecutor finished his closing argument (Vol. II at 877). Any prejudice arguably caused by the prosecutor's comment must be deemed cured by the proper jury instruction, and Kurena was not denied a funda-

---

**15.** Leenheer *testified only that Kurena had met someone who owed him money (Vol. II at 584). Pritchett, however, did corroborate Severs' testimony (Vol. I at 406).*

**16.** Leenheer admitted someone made such a statement while in his car, but he could not tell whether Kurena or Damron was the declarant.

**17.** It might perhaps be said the prosecutor's reference to Kurena's presumption of innocence was invited by Kurena's counsel's earlier remark. However, there is no way in which the prosecutor's *misstatement* of the law can be called "invited."

**1176**

mentally fair trial because of prosecutorial misconduct.

*United States v. Segna,* 555 F.2d 226 (9th Cir.1977), relied on heavily by Kurena, does not require a different result. There the sole issue was whether defendant was insane. During closing arguments the prosecutor incorrectly argued defendant had the burden of proving insanity. On direct appeal, that error was held to have severely prejudiced defendant where the question of insanity was extremely close. Unlike the Court of Appeals' role in *Segna,* this Court does not sit in Section 2254 cases to correct any and all prosecutorial errors committed in a state trial (see *Clark,* 538 F.2d at 760). In terms of Kurena's entire trial, the acknowledged error by the prosecutor was not sufficiently prejudicial to deprive Kurena of his constitutional right to a fair trial.

### Ineffective Assistance of Appellate Counsel

Kurena's penultimate argument asserts he was not effectively represented on appeal—a violation of his Sixth Amendment rights. He points to the failure of his appellate counsel to raise his trial-judge-questioning, improperly-excluded-evidence and Fifth Amendment claims on direct appeal of his conviction.

*Strickland v. Washington,* 466 U.S. 668, 687, 689, 104 S.Ct. 2052, 2064, 2065, 80 L.Ed.2d 674 (1984) set out a two-part and "highly deferential" test for ineffective assistance of counsel at the trial level:

> First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense.

Because the Sixth Amendment guaranty extends to effective appellate as well as trial representation (*Evetts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)), *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) has applied the *Strickland* test to a case such as this one:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

This Court has "examine[d] the trial court record" in those terms. It cannot fairly be said Kurena's trial-judge-questioning, Fifth Amendment and improperly-excluded-evidence claims were "clearly stronger" than the claims actually presented to the Appellate Court. Appellate counsel need not raise and brief issues that they reasonably believe have no merit or that probably will not be considered on their merits by the Appellate Court. *Francois v. Wainwright,* 741 F.2d 1275, 1285 (11th Cir.1984).

Kurena's trial counsel did not object to the alleged (but non-meritorious) trial-judge-questioning and Fifth Amendment errors already discussed in this opinion. That meant those claims were waived on appeal—by definition rendering them non-significant and non-obvious in terms of appellate presentation. As for the improperly-excluded-evidence claim, though it was raised before the trial court, it foundered on a well-established Illinois evidentiary rule. It too was non-significant and non-obvious in *Gray v. Greer* terms.

Even were that not so as to the unasserted claims, Kurena would fall at the second *Strickland* hurdle: the need to show prejudice. This opinion has already found Kurena's trial-court-questioning, Fifth Amendment and improperly-excluded-evidence claims lacking in merit. It necessarily follows Kurena's direct appeal "would have come out the same way had the claims been advanced." *Winters,* 644 F.Supp. at 793.

### Combined Errors

Finally Kurena asks this Court to consider the combined effect of his alleged errors on his due process right to a fair trial. That argument adds nothing to

Kurena's Petition. This opinion has already determined only one of Kurena's claims (his presumption-of-innocence claim) involves any error—and that was not one of constitutional dimension.

Six times zero remains zero. And the seventh specification of error, rendered harmless by the trial court's proper jury instruction, did not deprive Kurena of a fair trial.

*Conclusion*

There is no need for any evidentiary hearing (see Rule 8(a)). Kurena's Petition and this action are dismissed on the merits.